UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| 4.318 ACRES OF LAND, more or less, in HIDALGO COUNTY, TEXAS; JOSE ARNOLDO AGUILAR; HIDALGO COUNTY IRRIGATION DISTRICT NO. 2; MILITARY HIGHWAY WATER SUPPLY CORPORATION; and PABLO "PAUL" VILLARREAL, JR., Hidalgo County Tax Assessor-Collector, | § § § § § § § § § | CIVIL ACTION NO. 7:20-cv-00388 |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

The Court now considers Plaintiff United States' "Amicus Brief Regarding Title of Tract RGV-WSL-1014"[1] and "Defendant Hidalgo County Irrigation District No. 2's Brief Regarding Title and Request for Oral Argument."[2] On April 21, 2021, the Court issued its scheduling order which provided independent deadlines for the United States and all Defendants to "submit briefs and evidence regarding title ownership to the property subject to eminent domain in this action."[3] The United States' brief and one Defendant's brief was submitted timely.[4] No other briefs were submitted by the deadline. The Court now turns to the issue of ownership of the subject property.

The Court has jurisdiction to determine ownership of the money paid into its custody by

---

[1] Dkt. No. 22.
[2] Dkt. No. 23.
[3] Dkt. No. 21 at 2.
[4] Dkt. Nos. 22–23.

1 / 8

the United States.[5] "The Constitution requires that just compensation be made and the statutes charge the district court with seeing that this is done. It cannot be done by paying it to the wrong persons."[6] As such, the Court must adjudicate ownership.[7] The Court looks to local law to determine the governing interests in the land.[8] When more than one person or entity claims the same land or entitlement to just compensation for its taking, the burden is on the claimant to identify the proper scope and priority of its interests.[9] The Court now turns to "exercise its jurisdiction to determine the true owners of the condemned land."[10]

The 4.318-acre parcel, designated Tract RGV-WSL-1014, that the United States seeks to take via eminent domain in this case is "out of the Domingo Fonseca Survey, Abstract No. 33, Porción 67, Hidalgo County, Texas, being out of Lot 6, Block 27 of Steele and Pershing Subdivision."[11] On May 1, 1910,[12] various grantors including the "Estate of G. Bedell Moore" acting through its executors, R. D. Steele, and R. S. Pershing conveyed, *inter alia*, "The Lots . . . 6 in Block 27 166.05 acres" to John J. Conway, but reserved to "The Louisiana-Rio Grande Canal Company" certain rights to construct an irrigation plant, system, canals, laterals, and the

---

[5] *James Alexander, Inc. v. United States*, 128 F.2d 82, 85 (5th Cir. 1942).
[6] *Clark v. White*, 185 F.2d 528, 530 (5th Cir. 1950).
[7] *See United States v. 88.28 Acres of Land, more or less, in Porter Cnty.*, 608 F.2d 708, 714 (7th Cir. 1979) (citing *United States v. 1,629.6 Acres of Land*, 503 F.2d 764, 766 (3d Cir. 1974)) ("The district court clearly had the power to settle the conflicting claims to the title of the condemned land."); *United States v. Atomic Fuel Coal Co.*, 383 F.2d 1, 3 (4th Cir. 1967) ("With notice of the claim of Atomic, its interest as well as that of all other claimants should have been determined by the Court before directing the ascertainment of just compensation.").
[8] *See U.S. ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 279 (1943).
[9] *United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966) (citing *United States v. Turner*, 175 F.2d 644 (5th Cir. 1949)); *see United States v. Certain Land in Vill. of Highgate Springs*, 413 F.2d 128, 128 (2d Cir. 1969) (per curiam) (holding that a claimant failed to carry his burden of establishing his title); *United States v. 350.925 Acres of Land, more or less, in Presidio Cnty.*, 588 F.2d 430, 431 (5th Cir. 1979) ("The burden on the prevailing claimant is simply to show that his claim is superior to that of the other.").
[10] *United States v. 22,680 Acres of Land in Kleberg Cnty.*, 438 F.2d 75, 77 (5th Cir. 1971); *see Clark v. White*, 185 F.2d 528, 530 (5th Cir. 1950) ("Of the jurisdiction and duty of the district court in distributing the fund in a condemnation case to find out to whom it justly belongs we have no doubt, and technical considerations ought not to limit it.").
[11] Dkt. No. 1-1 at 6. See the subdivision map at Dkt. No. 23-1 at 3.
[12] Property Records, HIDALGO COUNTY, https://hidalgo.tx.publicsearch.us/ (follow "Advanced Search" hyperlink; then search document number 1910-80116; then open the document; then turn to page 5).

like over and under the land conveyed.[13] On May 5, 1910, "the Estate of G. Bedell Moore" acting through its executors, and other grantors, "being the owners of all of Porcion 67," executed their "instrument of sub-division and dedication" of 7,704.96 acres out of Porción 67 designated by metes and bounds, "Less acreage in Canal 14.66."[14] It is not clear whether the metes and bounds of the May 5, 1910 subdivision and dedication overlapped the metes and bounds of the May 1, 1910 conveyance.

In March 1911, John J. Conway conveyed to the Louisiana-Rio Grande Canal Company additional riparian and water rights and easements over lot 6, block 27 to enable the grantee to take water from the Rio Grande River.[15] The conveyance created appurtenant rights binding on all successors and assigns of both grantor and grantee.[16] In December 1911, John J. Conway conveyed to H.C. Harding "Porcion Sixty-seven (67), Dominguez Fonseca, original grantee . . . [s]aid land hereby conveyed is further described as being Lot Six (6) Block Twenty-seven (27)," subject to the March 1911 reservations for the Louisiana-Rio Grande Canal Company.[17] In February 1912, the "Executors of the Estate of G. Bedell Moore, Deceased" and "John J. Conway" and other grantors conveyed to "Louisiana-Rio Grande Canal Company," *inter alia*, an 8.80-acre tract of land demarcated by metes and bounds and designated "Lateral 'A,'" of which 8.78 acres were in "Porcion 67."[18] In June 1917, H.C. Harding conveyed a 1.06-acre portion of "Lot Number Six (6) in Block No. Twenty-seven (27) of that certain subdivision of land, generally known as Steele and Pershing Subdivision of Porciones 66 and 67" to "Louisiana Rio Grande Canal Company."[19] The June 1917 conveyance references Lateral A and states that the

---

[13] Dkt. No. 22-5.
[14] Dkt. No. 23-2.
[15] Dkt. No. 22-6.
[16] Dkt. No. 22-7 at 7.
[17] Dkt. No. 22-8.
[18] Dkt. No. 23-3 at 1–4, 20.
[19] Dkt. No. 22-9.

1.06-acre portion lies north of the Louisiana Rio Grande Canal Company's Lateral A.[20] On the last day of 1920, the Louisiana-Rio Grande Canal Company conveyed the 8.80-acre Lateral A tract (described in the 1912 conveyance) *and* the 1.06-acre carveout (described in the 1917 conveyance) to "Hidalgo County Water Improvement District NO. TWO."[21] Hidalgo County Water Improvement District No. Two was then "converted" under Texas law into its modern rendition of Hidalgo County Irrigation District No. 2 in 1980.[22] On the last day of 1920, the owners of the relevant lot 6, block 27 appear to be only Defendant Hidalgo County Irrigation District No. 2's predecessor-in-interest and H.C. Harding. Based on the evidence heretofore discussed, the Court does not find that the May 5, 1910 subdivision and dedication concerned land at issue in this case.

At an unknown time after his conveyance of June 1917, H.C. Harding appears to have died unmarried, leaving his estate to his two surviving daughters Ruby Harding Kelso and Maud Harding Horn.[23] In April 1921, Ruby Harding Kelso a/k/a Ruby A. Kelso *et vir* purported to convey "Lot six (6), in Block Twenty-seven (27), of the Steele and Pershing Subdivision of the Santa Cruiz [sic] Plantation" to "Maude E. Horn."[24] However, the 1921 conveyance made no mention of the 1.06-acre carveout or the 8.80-acre Lateral A.[25] Nevertheless, on September 8, 1926, Maude E. Horn conveyed "Lot Six (6), in Block Twenty Seven (27), of the Steele & Pershing Subdivision of Porciones 66 and 67 in Hidalgo County, Texas . . . except One and Six Tenths (1.6) acres which was conveyed by H.C. Harding to the Louisiana Rio Grande Canal

---

[20] *Id.*
[21] Dkt. No. 23-5 at 3, 9–10, 41.
[22] *About the District*, HIDALGO COUNTY IRRIGATION DISTRICT NO. 2, http://www.hcid2.org/about.htm (cited in Dkt. No. 23 at 3).
[23] Dkt. No. 22-10 at 2.
[24] Dkt. No. 22-11.
[25] *Compare* Dkt. No. 22-8 at 1 (describing lot 6, block 27 as containing 37 acres in December 1911), *with* Dkt. No. 22-11 (describing lot 6, block 27 as containing 37 acres in April 1921, after the 1917 1.06-acre carveout).

4 / 8

Company by deed dated June [] 1917" to H.H. Rankin.[26] On September 18, 1926, H.H. Rankin conveyed "Lot Six (6), in Block Twenty Seven (27), of the Steele & Pershing Subdivision of Porcion Sixty Seven (67) . . . except One and Six Tenths (1.6) acres which was conveyed by H.C. Harding to the Louisiana Rio Grande Canal Company by deed dated June 23, 1917" to A. Damron.[27] The Court interprets the references in both September 1926 conveyances to the 1.6-acre exceptions to be scrivener's errors that are more properly understood and interpreted by the terms of the referenced June 1917 conveyance.[28] Accordingly, the Court interprets the last September 1926 conveyance to have vested all title and interest in the relevant lot 6, block 27 in A. Damron save for the 1.06-acre carveout and the 8.80-acre Lateral A and all other riparian and water rights and easements over the whole parcel owned and enjoyed by the Louisiana-Rio Grande Canal Company or its successors.

In May 1945, "Arch Damron and Verda E. Damron"—presumably A. Damron and his wife—conveyed "[a]ll of lot six (6), block twenty-seven (27), of the Steele and Pershing Subdivision of land in Hidalgo County, Texas, save and except one and six one-hundredths (1.06) acres of land heretofore conveyed by H.C. Harding to Louisiana Rio Grande Canal Company June 23, 1917" to "H.H. Rankin, Jr."[29] In May 1947, H.H. Rankin, Jr. made an identical conveyance to "Vernal O'Neill."[30] In November 1947, Vernal O'Neill made an identical conveyance (notarized by H.H. Rankin, Jr.) to "H.H. Kawahata."[31] In August 1951, H.H. Kawahata made an identical conveyance to "G. SUEYASU."[32] In August 1967, "G. SUEYASU" *et uxor* made an identical conveyance to "LOUISIANA STRAWBERRY AND

---

[26] Dkt. No. 22-12.
[27] Dkt. No. 22-13.
[28] *See Chase Manhattan Bank v. First Marion Bank*, 437 F.2d 1040, 1048–50 (5th Cir. 1971) (discussing the doctrines of interpreting contracts and drafting mistakes according to the parties' intentions).
[29] Dkt. No. 22-14.
[30] Dkt. No. 22-15.
[31] Dkt. No. 22-16.
[32] Dkt. No. 22-17.

VEGETABLE DISTRIBUTING COMPANY."[33] In July 1975, the "LOUISIANA STRAWBERRY AND VEGETABLE DISTRIBUTING COMPANY" made a substantively identical conveyance to "SCHOTT INDUSTRIES, INC."[34] In December 1978, "SCHOTT INDUSTRIES, INC., then known as KAPPA INDUSTRIES, INC." made an identical conveyance to "VICTOR RUSSELL And Wife MABLE RUSSELL."[35] In October 1992, "VICTOR RUSSELL and wife, MABLE RUSSELL" conveyed a 15.21-acre portion of "Lot Six (6), Block Twenty-Seven (27), STEELE AND PERSHING SUBDIVISION," of which 4.24 "acres are in canal R.O.W.," to "JOSE ARNOLDO AGUILAR."[36] Victor Russell and Mable Russell also conveyed other portions of the same lot 6, block 27, to other grantees,[37] but the United States represents that "Tract RGV-WSL-1014, which consists of 4.318 acres, more or less, is entirely taken out of the 15.21 acres described in the deed conveying title to Defendant Jose Arnoldo Aguilar."[38]

In the United States' May 2021 brief regarding title, the United States asserts that "0.063 of an acre (27.63 sq. ft.) [of the taking] were owned by Defendant Hidalgo County Irrigation District No. 2 by virtue of the 1.06 acres conveyed from H.C. Harding to Louisiana Rio Grande Canal Company in 1917."[39] Also in its brief, the United States asserted that "it does not appear" that Hidalgo County Irrigation District No. 2 owned Lateral A.[40] But as of June 2021, counsel for Defendant Hidalgo County Irrigation District No. 2 avers that the United States changed its position and agrees that Defendant Hidalgo County Irrigation District No. 2 owns Lateral A in

---

[33] Dkt. No. 22-18.
[34] Dkt. No. 22-19.
[35] Dkt. No. 22-20.
[36] Dkt. No. 22-2.
[37] Property Records, HIDALGO COUNTY, https://hidalgo.tx.publicsearch.us/ (follow "Advanced Search" hyperlink; then search document number 1993-306109 and document number 1993-301466).
[38] Dkt. No. 22 at 8, ¶ 18.
[39] *Id.*
[40] Dkt. No. 22 at 10–11, ¶ 23.

fee simple.[41] As a result, according to Defendant's "mapping software," the United States' taking of approximately 4.318 acres overlaps 2.795 acres of Lateral A.[42] Defendant asserts that it is entitled to 64.73% (2.795 acres ÷ 4.318 acres) of the total just compensation.[43] The United States has declined to respond to Defendant's argument.[44]

Based on the foregoing evidence presented, the Court finds that Defendant Hidalgo County Irrigation District No. 2 owns the 8.80-acre Lateral A in fee simple and the 1.06-acre carveout in fee simple. The Court also finds that Defendant Jose Arnoldo Aguilar is the record owner of the relevant larger parcel from which the 4.318 acres is taken. Therefore, the Court finds that the United States' 4.318-acre taking takes 2.795 acres from Defendant Hidalgo County Irrigation District No. 2 and 1.523 acres from Defendant Jose Arnoldo Aguilar. Although the United States named "Military Highway Water Supply Corporation" as an interested party Defendant in this case[45] and discussed a pipeline easement granted to Military Highway Water Supply Corporation in 1979,[46] the United States' taking reserves all pre-existing pipeline easement and mineral rights to their respective owners.[47] Accordingly, the Court does not find that Defendant Military Highway Water Supply Corporation is subject to a taking or loss of any of its interests. Military Highway Water Supply Corporation is therefore not entitled to any just compensation. However, Defendant Pablo "Paul" Villarreal, Jr., Hidalgo County Tax Assessor-Collector, claims at least $20,113.92 in delinquent ad valorem taxes for tax years 1997–2020.[48]

---

[41] Dkt. No. 23-4 at 2, ¶ 4.
[42] Dkt. No. 23 at 3–4.
[43] *Id.* at 4.
[44] Dkt. No. 23-4 at 3, ¶ 5.
[45] Dkt. No. 1-1 at 23.
[46] Dkt. No. 22 at 8, ¶ 16 (citing Dkt. No. 22-21).
[47] Dkt. No. 1-1 at 18.
[48] Dkt. No. 10 (citing TEX. TAX CODE ANN. § 32.01 (West 2021)) (describing tax liens on the property).

Defendant Jose Arnoldo Aguilar agrees that any just compensation due to him will actually be paid to taxing authorities for this delinquent taxes.[49]

In light of the Court's findings, the Court **DISMISSES** Defendant Military Highway Water Supply Corporation from this case. The Court's April 21, 2021 scheduling order continues to govern this case.[50] This opinion and order resolves the ownership and entitlement to just compensation issues in this case. Having resolved the issues, the Court does not need oral argument and **DENIES** Defendant Hidalgo County Irrigation District No. 2's request for oral argument.[51]

IT IS SO ORDERED.

DONE at McAllen, Texas, this 30th day of June 2021.

							_____
							Micaela Alvarez
							United States District Judge

---

[49] Dkt. No. 19 at 4, ¶ 10.I; *see* TEX. TAX CODE ANN. § 32.05 (providing for the priority of tax liens).
[50] Dkt. No. 21.
[51] Dkt. No. 23 at 4 (citing LR7.5.A).